KURT A. KAPPES – SBN 146384
LUPE R. LAGUNA – SBN 307156
JONATHAN K. OGATA – SBN 325914
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA  95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
kappesk@gtlaw.com
lagunal@gtlaw.com
ogataj@gtlaw.com

Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>iCarz Inc., d/b/a LENDING CLUB AUTO d/b/a LATINOS AUTO CENTER, California Corporation,<br><br>    Defendant. | CASE NO.  2:20-CV-00851-MCE-CKD<br><br>**PLAINTIFF NEXTGEAR CAPITAL, INC.'S APPLICATION FOR TEMPORARY RESTRAINING ORDER & MOTION FOR A PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION; DECLARATION OF LUPE R. LAGUNA; AND DECLARATION OF ERIC BROWN**<br><br>**REQUEST FOR PRELIMINARY INJUNCTION** |

**TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

Plaintiff, NextGear Capital, Inc., through counsel, hereby moves the Court for a temporary restraining order and preliminary injunction enjoining Defendant iCarz, Inc. d/b/a Lending Club Auto d/b/a Latinos Auto Center, ("Defendant" or "iCarz") from: (1) Moving, transporting, selling, leasing, or transferring title or ownership of any of the Defendant car dealership's vehicles because those vehicles are secured collateral for a Note that Defendant has defaulted on; and (2) requiring Defendant to identify the location of any of the vehicles that it pledged as collateral for the note but been moved or transported, for any reason, from Defendant's location at 3215 Fulton Ave. Sacramento, California, 95821.

This application is made pursuant to Rule 65 of the Federal Rules of Civil Procedure and is based upon the attached Memorandum of Points and Authorities, the Declarations filed concurrently herewith, and the papers and pleadings on file herein and any oral argument that this Court may allow, at a date and time the Court deems appropriate. This application is made after Plaintiff's counsel provided actual notice to the affected party on May 1, 2020, (*See* Decl. of L. Laguna), at which time Plaintiff's counsel informed the affected party of Plaintiff's intention to seek a temporary restraining order, that any hearing on Plaintiff's motion would be set by the Court, and the nature of the relief requested. To the extent the Court sets a specific time and location for a hearing on this application or plaintiff's motion for preliminary injunction, counsel for Plaintiff will promptly endeavor to give additional notice to the affected party of the time and location of the hearing. *See* L.R. 231 (a).

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff brings this action against Defendant for breach of contract and seeking claim and delivery of the collateral securing Defendant's obligations under the operative agreement. Through the instant application and request for a preliminary injunction, Plaintiff seeks to enjoin Defendants, a local car dealership, from brazenly liquidating hundreds of thousands of dollars of floor planned vehicle inventory that secures the Defendant's obligations under a note that Defendant has defaulted on. Such provisional relief is well accepted in the Ninth Circuit when the party seeking to protect its collateral establishes a likelihood that the collateral will be dissipated. *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir.2009) ("A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted."); *In re Focus Media Inc.*, 387 F.3d 1077 (9th Cir. 2004) (holding the prospect of dissipating assets "raises the specter of irreparable harm to the bankruptcy estate if these funds are not frozen."); *Harley-Davidson Credit Corp. v. Monterey Motorcycles, Inc.*, No. 5:12-CV-01864 EJD, 2012 WL 1309151, at *3 (N.D. Cal. Apr. 16, 2012) (granting TRO to prevent dissipation of vehicle assets). Here, iCarz is already in the process of liquidating the security and has been unresponsive to Plaintiff's request for clarification on the status of the security. (Decl. of E. Brown, ¶¶ 21 – 24.) Thus, in the absence of a Court order enjoining the iCarz's liquidation, iCarz will continue to dissipate the collateral securing the underlying debt and any money judgment Plaintiff receives in this action will be meaningless.

## II. STATEMENT OF FACTS

### A. Contract Terms and Agreements

Plaintiff NextGear Capital, Inc. is a lender that focuses on, but is not limited to, inventory or floorplan financing for car dealerships. Defendant iCarz operates a pre-owned car dealership at 3215 Fulton Avenue, Sacramento, CA 95821. On August 29, 2013, iCarz entered into a Demand Promissory Note and Loan and Security Agreement (the "Note"). (*See* Brown Decl., Ex. A.) Under the terms of the Note, iCarz obtained a floorplan credit line from Plaintiff in the amount of $500,000 "or such greater or lesser sum which may be advanced to or on behalf of [iCarz] from time to time, together with all costs, interest, fees, and expenses." On or around August 3, 2015, iCarz and Plaintiff entered into an Amendment

to the Demand Promissory Note and Loan and Security Agreement (the "First Amended Note") under which iCarz's floorplan credit line was increased to $1,000,000. (*See* Brown Decl., Ex. B.)  Then, on or around April 20, 2016, iCarz and Plaintiff again entered into an Amendment to Demand Promissory Note and Loan and Security Agreement (the "Second Amended Note") under which iCarz's floorplan credit line was increased to $2,000,000.  (Brown Decl. Ex. C.)  Plaintiff owns and holds the iCarz Note and these amendments.  To date, there is approximately $1.4 million in outstanding principal on the Note.  (*Id*. at ¶ 13.)

To secure the repayment of all amounts under the Note and all amendments thereto, iCarz granted a security interest to Plaintiff in the right, title, and interest in the following:

> "…all of [iCarz Auto's] assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in [iCarz]'s Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by [iCarz]; all cash reserves; all of [iCarz]'s books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of [iCarz] in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing (collectively, the "Collateral").

(*See* Brown Decl., Ex. A, ¶ 2 (a).)  Plaintiff's security interest in the collateral was perfected upon the filing of a UCC Financing Statement Amendment on August 2, 2013.  The UCC Financing Statement, as amended by the August 2, 2013, amendment, identifies the collateral as:

> All [iCarz]'s assets and properties wherever located, including without limitation all equipment of any nature, all vehicles, vehicle parts and inventory now owned or hereafter acquired, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by NextGear Capital, Inc. for [iCarz] of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts, accounts receivable, chattel paper, and general intangibles now owned or hereafter acquired by [iCarz] together with the proceeds thereof; all of [iCarz] documents, books and records relating to the foregoing.

(*See* Brown Decl., Ex. D.)  Thus, under the terms of the Note and the accompanying UCC financing statement, Plaintiff holds a perfected security interest in all of iCarz's assets.  To ensure protection of

Plaintiff's security interest, iCarz represented and warranted in the Note that it would "not remove any Lender Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless previously authorized in writing by the lender." (*Id.* at Ex. A, ¶ 4 (b).)   And, that it "would provide [Plaintiff] and its representatives with full access to all Collateral." (*Id.* at Ex. A, ¶ 2 (b).)

The most significant risk in floorplan financing is that the dealer borrower will sell the collateral in retail and then wrongfully retain the proceeds that should have been remitted to the floorplan lender. (Brown Decl., ¶ 17.)  A consumer purchaser of inventory in the ordinary course of business customarily takes the vehicle free of the lender's lien. (*Id.*)  The floorplan lender's main protection is, therefore, the trust and integrity of the dealer borrower ***to payoff vehicles as they are sold***. (*Id.*)  To the extent that the dealer borrower sells a vehicle in its inventory without paying off the principal and interest owed to the floorplan lender, such an occurrence is known as a "sale out of trust," or "SOT." (*Id.*)

To prevent sales out of trust, the Note mandates that "[u]pon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the proceeds from such sale in trust for the benefit of Lender, and Borrower shall pay to Lender, in accordance with this Note and the other Loan Documents, an amount equal to the unpaid balance of the Liabilities relating to such Unit of Lender Financed Inventory." (*Id.* at Ex. A, ¶ 5 (o).)  These monies are due "within twenty-four (24) hours" of iCarz receiving those funds. (*Id.* at Ex. A, ¶ 4 (f).)  iCarz's failure "to perform any of its obligations, undertakings or covenants under [the] Note or under any other Loan Document, including any obligation to repay any Liability when due...[or] obligation to pay upon demand any outstanding Liability under [the] Note" constitutes a default and a breach of the agreement. (*Id.* at Ex. A, ¶ 6(a).)

**B.     iCarz SOT Sale of The Collateral Vehicles**

Between May 14, 2019, and April 3, 2020, Defendant used the floorplan line of credit, to purchase one-hundred and twenty-six (126) vehicles from various sources for the principle amount of $1,444,609.13. The following vehicles (the "subject vehicles") were purchased with the floorplan line of credit and are thus collateral under the Note:

//

//

//

|     | Vehicle Description        | VIN               |
|-----|----------------------------|-------------------|
| 1.  | 2013 Mercedes-Benz SLK     | WDDPK4HAXDF068036 |
| 2.  | 2013 Ford F150             | 1FTFW1CT5DKE71107 |
| 3.  | 2010 Chevrolet Silverado   | 3GCRKTE39AG221650 |
| 4.  | 2010 Porsche Cayenne       | WP1AB2AP7ALA50446 |
| 5.  | 2009 Mercedes-Benz S Class | WDDNG77X69A271381 |
| 6.  | 2010 Jeep Wrangler         | 1J4BA5H12AL130002 |
| 7.  | 2013 Mercedes-Benz M Class | 4JGDA5HB0DA183669 |
| 8.  | 2011 Chevrolet Camaro      | 2G1FC1ED6B9163644 |
| 9.  | 2014 Ford F150             | 1FTFW1ET3EKE85246 |
| 10. | 2014 Dodge Charger         | 2C3CDXBG7EH170643 |
| 11. | 2009 Jeep Wrangler         | 1J4GA39119L786311 |
| 12. | 2012 Volkswagen Tiguan     | WVGBV7AX2CW529672 |
| 13. | 2013 Jeep Grand            | 1C4RJEAG7DC561555 |
| 14. | 2014 Volkswagen Tiguan     | WVGAV3AX2EW508957 |
| 15. | 2014 BMW 320               | WBA3B1C58EP680312 |
| 16. | 2011 Chevrolet Suburban    | 1GNSCJE06BR387965 |
| 17. | 2010 GMC Yukon             | 1GKUCAE03AR275712 |
| 18. | 2009 Mercedes-Benz CLK350  | WDBTJ56H09F266843 |
| 19. | 2012 Volkswagen GTI        | WVWHD7AJ7CW145321 |
| 20. | 2017 Lexu GX 4D            | JTJBM7FX7H5152265 |
| 21. | 2015 Ford Explorer         | 1FM5K7D8XFGB50749 |
| 22. | 2013 Mercedes-Benz C250    | WDDGF4HB1DR263826 |
| 23. | 2013 Buick Enclave         | 5GAKVDKD6DJ233528 |
| 24. | 2015 Chevrolet Silverado   | 1GCNCPEC6FZ367210 |
| 25. | 2016 Dodge Charger         | 2C3CDXCT4GH123178 |
| 26. | 2010 Toyota Highlander     | 5TDBK3EH1AS035275 |
| 27. | 2013 Mitsubishi Outlander  | JA4AS3AW2DU002795 |
| 28. | 2010 Toyota RAV4           | JTMYK4DV5A5026527 |

| | | |
|---|---|---|
| 29. | 2014 Dodge Ram | 1C6RR7FT7ES181575 |
| 30. | 2009 Cadillac Escalade | 1GYFK13249R158058 |
| 31. | 2012 Ford F150 | 1FTFW1ET7CFC59930 |
| 32. | 2013 Honda CR-V | 5J6RM3H77DL020999 |
| 33. | 2017 Jeep Renegade | ZACCJABB4HPE58127 |
| 34. | 2014 Subaru Outback | 4S4BRBEC8E3263450 |
| 35. | 2010 Lexu RX 450H | JTJBC1BA7A2406906 |
| 36. | 2009 Dodge Ram | 1D3HB18T89S722987 |
| 37. | 2011 Toyota Tundra | 5TFRM5F13BX027471 |
| 38. | 2015 Mercedes-Benz C Class | 55SWF4KB0FU003648 |
| 39. | 2013 Acura ILX | 19VDE1F55DE001260 |
| 40. | 2013 Chevrolet Impala | 2G1WG5E35D1157869 |
| 41. | 2013 Dodge Durango | 1C4SDHCT1DC689472 |
| 42. | 2012 Audi A5 | WAUCFAFH4CN006306 |
| 43. | 2012 Ram 1500 | 1C6RD7GP9CS222074 |
| 44. | 2011 Ford F150 | 1FTFW1EF9BKD52268 |
| 45. | 2014 Subaru Outback | 4S4BRBLC8E3210623 |
| 46. | 2012 Ford Escape | 1FMCU9DG4CKB76003 |
| 47. | 2011 Mercedes S Class | WDDNG7BBXBA387362 |
| 48. | 2010 Dodge Ram | 1D7RB1GP8AS102006 |
| 49. | 2014 Chevrolet Camaro | 2G1FA1E33E9268160 |
| 50. | 2015 Nissan Pathfinder | 5N1AR2MM3FC659793 |
| 51. | 2015 Mercedes-Benz C300 | 55SWF4JB8FU056177 |
| 52. | 2011 Volkswagen Touareg | WVGFF9BP4BD001473 |
| 53. | 2017 Dodge Grand Caravan | 2C4RDGEG4HR842075 |
| 54. | 2012 BMW X5 | 5UXZV8C54CL423907 |
| 55. | 2015 BMW 428I | WBA4A9C52FGL86380 |
| 56. | 2009 Dodge Ram | 1D3HV13PX9S704637 |
| 57. | 2011 Ford Explorer | 1FMHK7B81BGA94016 |
| 58. | 2007 Mercedes-Benz SLK | WDBWK54F07F153449 |

| | | |
|---|---|---|
| **59.** | 2015 Chevrolet Silverado | 3GCUKREC8FG330976 |
| **60.** | 2016 Chevrolet Camaro | 1G1FB1RS1G0148661 |
| **61.** | 2014 Chrysler Town & Country | 2C4RC1BG4ER156313 |
| **62.** | 2008 Chevrolet Tahoe | 1GNFC13078J190640 |
| **63.** | 2010 Ford F150 | 1FTEW1C8XAKE29695 |
| **64.** | 2003 Dodge Ram | 1D7HU18N23J507953 |
| **65.** | 2007 GMC Yukon | 1GKFK66827J221726 |
| **66.** | 2016 Dodge Ram | 1C6RR6GT2GS240981 |
| **67.** | 2014 Lexus RX 450H | JTJBC1BA2E2068577 |
| **68.** | 2014 Nissan Quest | JN8AE2KP7E9100874 |
| **69.** | 2014 Ram 1500 | 1C6RR7JT2ES106208 |
| **70.** | 2013 Ford F150 | 1FTFW1ET6DFB07123 |
| **71.** | 2008 Toyota Sequoia | 5TDZY68A38S002186 |
| **72.** | 2018 Hyundai Sonata | 5NPE24AF6JH662552 |
| **73.** | 2014 Mercedes-Benz M-Class | 4JGDA5HB6EA352532 |
| **74.** | 2015 Cadillac ATS | 1G6AB5RAXF0120679 |
| **75.** | 2013 Mercedes-Benz E Class | WDDHF5KB6DA705422 |
| **76.** | 2015 Mercedes-Benz GLA | WDCTG4EB7FJ135144 |
| **77.** | 2009 Chevrolet Silverado | 3GCEC23J99G122118 |
| **78.** | 2016 Ford F150 | 1FTEX1EP3GKF54385 |
| **79.** | 2009 Cadillac Escalade | 1GYFK26239R203587 |
| **80.** | 2013 Ford F150 | 1FTFW1ET1DKF97770 |
| **81.** | 2013 Toyota Tacoma | 5TFJU4GN2DX049540 |
| **82.** | 2013 Audi A7 | WAU2GAFC3DN083778 |
| **83.** | 2013 Ford Mustang | 1ZVBP8AM6D5238980 |
| **84.** | 2008 Chevrolet Silverado | 2GCEC13C581195165 |
| **85.** | 2007 Jeep Wrangler | 1J4FA54147L225127 |
| **86.** | 2007 Toyota Tundra | 5TBDV54197S470515 |
| **87.** | 2008 Toyota Tundra | 5TFBV54188X046723 |

| | | |
|---|---|---|
| **88.** | 2011 Nissan Frontier | 1N6AD0ERXBC424025 |
| **89.** | 2012 Jeep Grand Cherokee | 1C4RJFAG0CC145352 |
| **90.** | 2014 Chevrolet Silverado | 3GCPCREH0EG210223 |
| **91.** | 2010 Mercedes-Benz E350 | WDDHF5GB9AA096668 |
| **92.** | 2013 Hyundai Genesis | KMHHT6KD9DU102789 |
| **93.** | 2012 Chevrolet Silverado | 3GCPCSE00CG177366 |
| **94.** | 2017 Ford Fusion | 3FA6P0PU3HR329940 |
| **95.** | 2013 BMW 528I | WBAXG5C54DDY31642 |
| **96.** | 2007 Chevrolet Tahoe | 1GNFK13067R101353 |
| **97.** | 2013 Ford F150 | 1FTFW1ET4DFB38080 |
| **98.** | 2013 Chevrolet Camaro | 2G1FE1E31D9147887 |
| **99.** | 2015 Honda Crosstour | 5J6TF2H51FL000162 |
| **100.** | 2015 Chrysler 200 | 1C3CCCBB3FN717562 |
| **101.** | 2014 Ram 1500 | 1C6RR6GT8ES383592 |
| **102.** | 2011 Ram 1500 | 1D7RB1CT7BS515412 |
| **103.** | 2011 BMW 5-Series | WBAFR7C58BC801922 |
| **104.** | 2008 GMC Yukon | 1GKFK63818J241777 |
| **105.** | 2012 BMW 7-Series | WBAKB4C50CC576558 |
| **106.** | 2013 Chevrolet Malibu | 1G11A5SA2DF247665 |
| **107.** | 2013 Cadillac XTS | 2G61R5S37D9224749 |
| **108.** | 2013 Ford F150 | 1FTFW1ET3DKF43693 |
| **109.** | 2014 Mercedes-Benz CLA250 | WDDSJ4EB8EN037143 |
| **110.** | 2017 Land Rover Discovery | SALCP2BG9HH672143 |
| **111.** | 2013 Ford F150 | 1FTFW1ET9DFA54675 |
| **112.** | 2013 Mercedes-Benz GL Class | 4JGDF7CE7DA252520 |
| **113.** | 2016 Mercedes-Benz E-Class | WDDHF5KB8GB293826 |
| **114.** | 2007 Cadillac Escalade | 1GYFK63867R373519 |
| **115.** | 2014 Subaru Impreza | JF1GV7E60EG011736 |
| **116.** | 2014 Chrysler 300 | 2C3CCAKG5EH216728 |

| 117. | 2010 Toyota Tundra | 5TFFY5F12AX087828 |
|---|---|---|
| 118. | 2013 Honda Accord | 1HGCT1B80DA016150 |
| 119. | 2015 BMW 3-Series | WBA8Z5C50FD672457 |
| 120. | 2017 GMC Canyon | 1GTH5AEAXH1306074 |
| 121. | 2016 Mercedes-Benz C-Class | 55SWF4JB2GU156227 |
| 122. | 2015 Ram 1500 | 1C6RR6GGXFS518320 |
| 123. | 2017 Toyota Corolla | 5YFBURHE1HP595864 |
| 124. | 2015 Audi A8 | WAU32AFD7FN009715 |
| 125. | 2013 Honda Accord | 1HGCT2B87DA002980 |
| 126. | 2019 Nissan Sentra | 3N1AB7AP9KY273176 |

On March 27, 2020, an ACH payment initiated by iCarz in the amount of $41,017.51 was dishonored by iCarz's financial institution because of a "stop payment" order also initiated by iCarz. (Brown Decl., ¶ 18.) The payment was ultimately completed, but the incident led to increased scrutiny of the iCarz account. This increased scrutiny revealed there were dozens of the subject vehicles that were not being offered for sale on iCarz's website. (*Id.* at ¶ 19.) Concerned that iCarz had sold the vehicles but failed to remit the outstanding monies due under the Note, Plaintiff repeatedly attempted to communicate with iCarz to determine the status of vehicles for which Plaintiff had provided financing but apparently not being offered for sale, but iCarz was either non-responsive or evasive in its response. (*See id.* at ¶ 20.)

On April 8, 2020, Plaintiff declared iCarz in default of its obligations under the Note for, among other things, suspected SOT vehicles, and Plaintiff initiated a self-help repossession. (*Id.* at ¶ 21.) Upon performance of the repossession, Plaintiff determined that at least 13 of the subject vehicles had been sold out of trust. Plaintiff was able to determine the 13 vehicles were SOT because consumer financing companies that financed the purchases contacted Plaintiff asking for title to the vehicles. (*Id.*) iCarz never provided Plaintiff with any of the proceeds from these sales. (*Id.*)

Another 66 of the subject vehicles were not on iCarz's premises and were unaccounted for. (*Id.*) Plaintiff demanded that iCarz assemble and deliver the missing vehicles, or to account for their whereabouts, but iCarz refused to do so. (*Id.* at ¶ 22.) As of the date of this application, NextGear has

received no assurances that iCarz is not engaging in the unauthorized sale of the subject vehicles, and Plaintiff has not received any assurances that it will receive the proceeds from the sales.  (*Id.*)

## III. ARGUMENT

### A. Legal Standard

The standard for deciding requests for a temporary restraining order or preliminary injunctive relief are the same and are well established.  A party must demonstrate "'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).); *Am. Trucking Ass'n, Inc. v. City of L.A.*, 559 F.3d 1046, 1052 (9th Cir. 2009).  In the Ninth Circuit, preliminary relief is appropriate "when a plaintiff demonstrates . . . that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (quoting *Lands Council v. McNair*, 537 F.3d 981, 97 (9th Cir. 2008) (en banc)).  Here, that standard is readily satisfied.

### B. Plaintiff is entitled to Injunctive Relief

#### 1. Plaintiff is Likely to Succeed on the Merits of Its Breach of Contract Claims

Plaintiff's breach of contract claim is controlled by Indiana law. (*See* Brown Decl, Ex. A, ¶ 20.)  To recover from a breach of contract under Indiana law a party must prove "that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 369 (Ind. Ct. App. 2007).  Here Plaintiff is likely to prevail on each of these three elements.

First, there can be no dispute that a contract existed as it was duly executed by both parties.  The Note constitutes a set of promises between Plaintiff and Defendant, supported by legal consideration, for Plaintiff to advance funds to finance Defendant's inventory in exchange for Defendant's repayment of such funds, including interest and fees, as outlined in the Note.  For this reason, the Note is a binding contract. *See Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 329 (1977).

Second, it is clear that Defendant has materially breached the Note.  To prevent sales out of trust, the Note mandates that "[u]pon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the

proceeds from such sale in trust for the benefit of Lender, and Borrower shall pay to Lender, in accordance with this Note and the other Loan Documents, an amount equal to the unpaid balance of the Liabilities relating to such Unit of Lender Financed Inventory." (Brown Decl., Ex. A, ¶ 5 (o).) These monies are due "within twenty-four (24) hours" of iCarz receiving those funds. (*Id.* at Ex. A, ¶ 4 (f).) Plaintiff has already confirmed that 13 of the subject vehicles have been sold out of trust, and Plaintiff has not received any of proceeds of these sales. (*Id.* at ¶ 21.) Separately, in the Note iCarz agreed that it would "not remove any Lender Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless previously authorized in writing by the lender." (*Id.* at Ex. A, ¶ 4 (b).) Plaintiff has confirmed that sixty-six of the subject vehicles remain at iCarz's location, and Plaintiff has not authorized iCarz to move any of the subject vehicles. (*Id.* at ¶ 22.) iCarz's conduct is in direct contravention of the aforementioned Note provisions, and iCarz's failure to perform constitutes an event of default under the Note. (*Id.* at Ex. A, ¶ 6(a).)

Finally, Plaintiff has suffered damages as a result of Defendant's breach. Within 24 hours of sale, iCarz is required to remit to Plaintiff the unpaid balance of the liabilities relating to the sold subject vehicle. iCarz's refusal to do so with the 13 vehicles that have already been sold out of trust has caused significant financial injury to Plaintiff. And, iCarz's refusal to identify the location of the missing 66 vehicles jeopardizes a significant portion of Plaintiff's remaining collateral. There can therefore be no question that Plaintiff will prevail on the merits of its breach of contract claim.

### 2. Plaintiff Will Suffer Irreparable Injury in the Absence of a TRO

Irreparable harm to Plaintiff, in the absence of injunctive relief, is also readily established in this case. Without preservation of the status quo, there is nothing preventing iCarz from moving, selling, transferring title, or otherwise making unavailable any of the vehicles securing the note. Such actions would permanently deprive Plaintiff of its vested security interest and make any money judgment meaningless.

Courts regularly find irreparable harm based on facts similar to the case at bar. For example, in *Harley-Davidson Credit Corp. v. Monterey Motorcycles*, Inc., 2012 WL 1309151, at *3 (N.D. Cal. Apr. 16, 2012), the court issued a TRO enjoining the defendant car dealership from "leasing, selling, transferring, consigning, auctioning, dissipating, concealing, pledging, granting a security interest in, or

otherwise disposing of any" vehicles that were serving as collateral. *Id.* at 4. The court reasoned that the plaintiff lender was likely to suffer irreparable harm because without a TRO the defendant was "likely to dissipate assets, which would then become unavailable even if [p]laintiff obtained a money judgment from this litigation." *Id.* at 3.

The same is true, here. Plaintiff is aware that iCarz has already sold 13 of the subject vehicles without payment to Plaintiff. (Brown Decl., ¶ 21.) Further, Plaintiff's agents have confirmed that 66 of the vehicles that are security for the underlying Note are not present at Defendant's location. (*Id.*) And, iCarz is not responding to Plaintiff's repeated requests for payment and inquiries regarding the subject vehicles. (*Id.* at ¶ 24.) Thus, without an order preventing iCarz from (a) moving, transporting, selling, leasing, or transferring title or ownership of any of the subject vehicles; and (b) requiring Defendant to identify the location of any of subject vehicles that has been moved, transported, or sold, Plaintiff's collateral will be lost, and any money judgment obtained will be meaningless. *See Ford Motor Credit Co. v. Sebastopol Ford*, Inc., No. C-07-1783 JSW EMC, 2007 WL 1189749, at *3 (N.D. Cal. Apr. 19, 2007); *Harley-Davidson Credit Corp.*, 2012 WL 1309151, at *3 ("though pure economic loss alone is not normally sufficient to the issuance of a TRO, the possibility that a defendant will dissipate assets which could satisfy a judgment can constitute irreparable harm."). Thus, Plaintiff will suffer irreparable harm in the absence of a TRO.

### 3. The Balance of Interest Tips in Plaintiff's Favor and Injunctive Relief is in the Public Interest

Plaintiff's vested security interest and resulting right to the subject vehicles outweighs iCarz's interest in retaining control over the vehicles. The Note specifically states that upon default, Plaintiff has the right "to take possession of and remove any Collateral" and has the "rights and remedies of a secured party under the UCC." (Brown Decl., Ex. A, ¶ 7 (d).) Thus, any attempt by iCarz to move, sell, lease, transfer title or ownership or in any way prevent Plaintiff from claiming these vehicles, would constitute an impermissible restraint on Plaintiff's rights. As such, Plaintiff's interest here in securing these vehicles and preventing iCarz from dissipating Plaintiff's collateral, far outweighs any interest iCarz might have.

Similarly, preserving the vested security interests of Plaintiff is in the public interest as it ensures that contracting parties are held to the terms of their agreements and reaffirms a party's right to seek

reclamation of the very property that security interest secures. *See, e.g., Massage Envy Franchising LLC v. Goat Rodeo Ventures LLC*, No. CV-18-01998-PHX-JJT, 2018 WL 4148912, at *2 (D. Ariz. Aug. 30, 2018) (granting injunction to enforce terms of contract because it "is in the public interest, namely, that the terms of the valid contract should be enforced against the parties to the contract"); *Siemens Bldg. Techs., Inc. v. Camacho,* 168 F. Supp. 2d 425, 427 (E.D. Pa. 2001) (granting application for TRO because "[a]s a general matter, it is in the public interest to enforce valid contractual obligations and to protect legitimate business interests."). Thus, the public interest will best be served by granting Plaintiff's application.

### 4. The Court Should Dispense of the Bond Requirement.

No bond is warranted, here. Federal Rule of Civil Procedure 65(c) permits a court to grant preliminary injunctive relief "only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65 (c). In setting the amount of security, the district court has discretion as to whether to require security at all. *Johnson v. Couturier*, 572 F. 3d 1067, 1086 (9th Cir. 2009). In this vein, the district court may dispense with the bond requirement if it concludes there is "no realistic likelihood of harm to the defendant from enjoining [its] conduct." *Jorgensen*, 320 F. 3d at 919. Here, there is no risk of injury to iCarz because, as the defaulting party, it has no interest in the subject vehicles.

In any event, iCarz waived any right to a bond. The Note has a bond waiver provision stating that:

> WAIVER OF BOND: BORROWER WAVES, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY BOND OR SURETY OR SECURITY ON SUCH BOND WHICH MIGHT, BUT FOR THIS WAIVER, BE REQUIRED OF LENDER DURING ATTEMPTS TO RECOVER COLLATERAL OR OTHERWISE.

(Brown Decl. Ex. A., ¶ 25.) Other courts in this circuit have repeatedly found such provisions enforceable. *Morris CM Enterprises, LLC v. Wingstop Franchising, LLC*, 2020 WL 42241, at *6 (E.D. Cal. Jan. 3, 2020) (waiving Rule 65's bond requirement because of bond waiver provision); *Just Tacos, Inc. v. Zezulak*, 2011 WL 6140866, at *11 (D. Haw. Dec. 9, 2011) ("Defendants have plainly waived any bond posting requirement for injunctive relief"). Thus, the Court should not require Plaintiff to post a bond.

### IV. CONCLUSION

Plaintiff has satisfied each element required for this Court to issue a temporary restraining order. Plaintiff has demonstrated they are likely to succeed on the merits, will suffer irreparable harm, that the

balance of interest tips sharply in Plaintiff's favor, and that a temporary restraining order is in the public interest. Thus, Plaintiff respectfully requests that this Court grant the Application for a Temporary Restraining Order, enjoining iCarz from moving, transporting, selling, leasing, or transferring title or ownership of any of the subject vehicles identified herein, and ordering Defendant to identify the location of the subject vehicles.

Dated: May 1, 2020                    GREENBERG TRAURIG, LLP


By: /s/ Lupe R. Laguna
    Kurt A. Kappes
    Lupe R. Laguna
    Jonathan K. Ogata
    Attorneys for Plaintiff
    NEXTGEAR CAPITAL, INC.