KURT A. KAPPES – SBN 146384
LUPE R. LAGUNA – SBN 307156
JONATHAN K. OGATA – SBN 325914
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA  95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
kappesk@gtlaw.com
lagunal@gtlaw.com
ogataj@gtlaw.com

Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTGEAR CAPITAL, INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>iCarz Inc., d/b/a LENDING CLUB AUTO d/b/a LATINOS AUTO CENTER, a California Corporation,<br><br>Defendant. | CASE NO.  2:20-CV-00851-MCE-CKD<br><br>**REPLY IN SUPPORT OF APPLICATION FOR A WRIT OF POSSESSION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 64 & CALIFORNIA CODE OF CIVIL PROCEDURE § 512.010**<br><br>Date:   August 20, 2020<br>Time:  2:00 p.m.<br>Dept:   7, 14th Floor |

I.      INTRODUCTION

In its opposition, Defendant does not dispute that it liquidated over $1 million in vehicles financed by and pledged as collateral to Plaintiff without any communication, much less the required payments. Rather, in his Declaration, Ari Gorgani flatly admits that Defendant sold **over 100 vehicles** "out of trust." Now, doubling-down on its scheme to take advantage of the stay-at-home order and conduct a "smash-and-grab" of Plaintiff's remaining collateral, Defendant is clinging to what little is left of the collateral by opposing this application and refusing to deliver the vehicles.

All of Defendant's arguments offered in opposition to Plaintiff's application fail.  First, Defendant's argument that Plaintiff has not adequately identified the collateral is a non-starter.  (*See* Opp, 2 - 3, ECF No. 33.)  Plaintiff has taken the definition of the collateral *directly* from the underlying Note.  Defendant attempts to be coy by first concealing Plaintiff's collateral, then complaining to the Court that Plaintiff has not adequately identified the location or value of the collateral still in Defendant's possession.  The Court should not reward such misdirection by denying the relief that Defendant voluntarily agreed to in the Note.

Second, Defendant argues that Plaintiff's request exceeds the scope of the security interest drawing a strained distinction between "possession" and "acquired." (Opp. at 3.)   But Plaintiff's security interest does not require such a strained interpretation of words of common usage.  The Note and accompanying UCC filing are clear and unambiguous—Plaintiff's security interest encompasses "all [of Defendant's] vehicles and vehicle parts" wherever those vehicles may be located.  (*See* Brown Decl., Ex. A, ¶ 2 (a).) That is precisely what Plaintiff seeks, and is entitled to, with the instant application.

Finally, Defendant argues that Plaintiff should be required to post an undertaking.  But Defendant has waived the undertaking requirement, and the Court has already found that bond waiver provision enforceable.

Accordingly, Plaintiff's application for writ of possession should be granted.

II.     ARGUMENT

**A.      Defendant does not dispute that it has breached the Note, that Plaintiff has a right to immediate possession of the Collateral, and that Defendant is wrongfully retaining the collateral.**

Defendant does not dispute that it has brazenly liquidated some of the collateral without any of the required payments to Plaintiff.  Given Defendant's breach, Plaintiff has a right to immediate possession of

every one of Defendant's vehicle within its possession or control. Specifically, the Note provides that upon Defendant's default:

> Lender shall have all rights and remedies available hereunder and under the other Loan Documents, and all rights and remedies available to Lender at law or in equity, including the rights and remedies of a secured party under the UCC. These rights and remedies include the right to cancel any unfunded Advances; to enter into Borrower's premises with or without legal process, but without force, and to take possession of and remove any Collateral; and to notify any account debtors or other Person obligated on Collateral to make payment or otherwise render performance to or for the benefit of Lender.

(*Id*. at Ex. A, ¶ 7 (a).)  The Note defines the "collateral" as, among other things, "all vehicles and vehicle parts."  (*Id*. at Ex. A, ¶ 2 (a).)  Thus, Defendant's breach of the Note plainly establishes the basis for Plaintiff's claim that it is entitled to a writ of possession.

Defendant does not dispute its breach, nor does it dispute that it is retaining the remaining collateral vehicles and refusing to deliver them.  Instead, in its introduction, Defendant casts blame on the consequences of COVID-19 for its default. (Opp. at 1.) Even assuming Defendant's unsupported assertion were true, nothing is now preventing Defendant from mitigating its damages and delivering the collateral vehicles sought with this application directly to Plaintiff.  Instead, consistent with Defendant's conduct that caused this action to be filed, it is continuing to simply ignore its obligations under the Note and refusing to assemble and deliver Plaintiff's remaining collateral, thereby forcing Plaintiff to seek relief with this Court.  Plaintiff is aware of facts indicating that Defendant's, principal, Ari Gorgani, is continuing to conceal collateral vehicles at third-party locations. (*See* Mot, 5.)  Tellingly, Defendant does not dispute this assertion in its opposition.  Thus, to prevent even further dissipation of Plaintiff's collateral, the application for writ of possession must be granted.

### B.   Plaintiff has satisfied the requirements of Section 512.010(a).

Notwithstanding its admitted breach of the Note, Defendant is *still* attempting to retain possession of the collateral by offering a smattering of arguments as to why a writ should not issue, all of which fail.

#### 1.   Plaintiff has adequately identified the collateral and its value.

The description of property to be sought is readily obtainable from face the Note. (Brown Decl., at Ex. A, ¶ 7 (a).) Specifically, Plaintiff seeks a writ of possession of all the motor vehicle inventory that remains in Defendant's possession, as it is entitled to do under the terms of the Note. (*Id.*) Plaintiff believes that the value of the collateral Plaintiff seeks to recover is less than outstanding balance on the note, which

is $1,444,609.13.  (*Id.* at ¶ 13.)  The vehicles sought are located at Defendant's business address, 3215 Fulton Ave., Sacramento, California, and some vehicles may be stored at one or more additional locations as well.  (*Id.* at ¶¶ 5, 24.)  Mr. Gorgani's declaration further confirms that these locations have at least some vehicles still present.  (*Id.* at Ex. F.)

      This is all the identification that is required under the law.  For example, in *Ford Motor Credit Co. v. Sebastopol Ford, Inc.*, C 07-01783 JSW, 2007 WL 1545187, at *6 (N.D. Cal. May 25, 2007), the district court granted the plaintiff's application for writ of possession because the secured floor plan lender "established the probable validity of its claim to possession of the property at issue" due to the defendant's SOT sale of vehicles.  *Id.*  There the court concluded that identifying "Sebastopol Ford's furniture, fixtures, machinery, supplies and other equipment, **all motor vehicles**, tractors, trailers, implements, service parts and accessories and other inventory of every kind, all accounts, contract rights, chattel paper," with the text of the security agreement offered in support, satisfied the identification requirements of Section 512.010 (a).  *Id.* (emphasis added).

      That is precisely what Plaintiff has done here.  Plaintiff has offered a receivable detail that lists the VIN, color, vehicle make and model, and the financed price of each financed vehicle.  (Brown Decl., Ex. E.)  For the non-floor planned vehicles, just as was sufficient in *Ford Motor Credit*, Plaintiff here has provided to the Court the Note and accompanying UCC filing that identifies the collateral as including, "assets and properties, wherever located, including, without limitation, all equipment of any kind or nature" and "**all vehicles and vehicle parts**."  (*Compare* Brown Decl., Ex. A, ¶ 2 (a) *with Declaration of J. Polley in support of Ford Motor Company's Application for Writ of Possession*, Case No. 3:07-CV-01783 (N.D. Cal.), Ex. B, ECF No. 15-1.)  Plaintiff has also adequately identified, to the best of its ability given the Defendant's ongoing efforts to conceal the remaining collateral, the total value of the collateral that it seeks to recover.  The receivable detail offered by Plaintiff reflects that the outstanding principal under the Note is $1,416,003.20.  Plaintiff has therefore adequately identified the collateral sought with the writ and its anticipated value.

      To the extent the Court believes a further detailed description is required, and there is a risk that vehicles that do not belong to Defendant may be accidentally seized by the levying officer, the Court can direct a representative from both Defendant and Plaintiff to accompany the levying officer to ensure that

no vehicles owned by parties other than iCarz are accidentally seized.[1]  Such a remedy is frequently employed by Courts in similar situations.  *See, e.g., MB Fin. Bank, N.A. v. Kartel Plastics, Inc*., No. EDCV1724RGKSPX, 2017 WL 7201875, at *6 (C.D. Cal. Mar. 9, 2017) (ordering representatives to accompany levying officer and finding that "with such assistance the Collateral is sufficiently described."); *see also Ford Motor Credit Co*., 2007 WL 1545187, at *3 (directing Ford Motor Credit's representatives to accompany the levying officer in executing the writ).

### 2. Plaintiff's requested writ does not exceed the scope of the security interest.

Plaintiff's request is aptly supported by the Note and the accompanying UCC filing, which unambiguously define Plaintiff's collateral as:

> …all of [Defendant's] assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; ***all vehicles and vehicle parts***; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in [Defendant's] Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by [Defendant]; all cash reserves; all of [Defendant's] books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of [Defendant] in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing (collectively, the "Collateral").

(*See* Brown Decl., Ex. A, ¶ 2 (a) (emphasis added).)

Effectively conceding that Plaintiff has a secured interest in Defendant's vehicles, Defendant appears to argue that Plaintiff's writ is defective because it is not limited to those vehicles that Defendant "owns" outright and instead seeks the remaining vehicles in Defendant's possession.  This argument fails for a number of reasons.  First, the collateral is identified as "***all vehicles and vehicle parts***" and is not in any way limited to vehicles that Defendant owns outright, subject to no other liens.  (*Id.*)  This makes sense, given that the underlying Note was a financing instrument—in other words, Defendant does not "own" outright a single vehicle that it financed under the Note, because ***Plaintiff*** retains the title for some or all of those vehicles.  Second, limiting the writ to vehicles in Defendant's possession or control is important, given that Defendant has sold many of its vehicles out-of-trust to third-party consumers.  To avoid any

---

[1] If the Court would like Plaintiff to submit a modified [proposed] writ that explicitly directs party representatives to accompany the levying officer during the writ's execution, Plaintiff would be happy to do so at the Court's direction.

ambiguity, and to offer some level of protection to these consumers who were unaware that they were purchasing Plaintiff's vehicles, the writ is limited to those vehicles that are still within Defendant's possession or control. Finally, the language of "owned or hereafter acquired" cited by Defendant in its opposition is in a separate clause from "all vehicles and vehicle parts." (*See* Brown Decl., Ex. A, ¶ 2 (a).) This important textual distinction renders strained distinction between "owned" and "possession" superfluous. In any event, as noted above, as an added level of protection and to ensure no non-iCarz property is seized, the Court can direct party representatives to accompany the levying officer. *See MB Fin. Bank, N.A.*, 2017 WL 7201875, at *6.

### 3. An undertaking is not required.

The Court should not require Plaintiff to post an undertaking. Section 515.010 provides that a writ may not issue unless the plaintiff posts an undertaking "not less than twice the value of the defendant's interest in the property or in a greater amount." Cal. Civ. Proc. Code § 515.010 (a). But, much like Federal Rule of Civil Procedure 65(c), it also provides that if the "court finds that the defendant has no interest in the property, the court shall waive the requirement of the plaintiff's undertaking." Cal. Civ. Proc. Code § 515.010 (b).

Here, Defendant argues that a bond should be required because there is an unspecified risk that vehicles will be improperly seized. But every single one of Defendant's vehicles is collateral under the Note. Thus, there is no risk of improper seizure. And to the extent there was any risk, Defendant could have simply voluntarily turned over the vehicles that Plaintiff is clearly entitled to take possession of and mitigate that risk (as well as its damages). But Defendant refused to do so.

In any event, Defendant has waived any right to a bond or undertaking. The Note has a valid and enforceable bond waiver provision. (Brown Decl. Ex. A., ¶ 25.) Other courts in this circuit have repeatedly found such provisions enforceable. *Morris CM Enterprises, LLC v. Wingstop Franchising, LLC*, 2020 WL 42241, at *6 (E.D. Cal. Jan. 3, 2020) (waiving bond requirement because of bond waiver provision); *Just Tacos, Inc. v. Zezulak*, 2011 WL 6140866, at *11 (D. Haw. Dec. 9, 2011) ("Defendants have plainly waived any bond posting requirement for injunctive relief"). Indeed, this Court previously concluded the waiver provision was enforceable as to the Rule 65 bond requirement, thus it should apply with equal force to an analogous provision of the California Code of Civil Procedure. (*See* TRO Order at ¶ 5 (Court finding that,

"Due to the nature of the issues presented by this action, and Defendant's executed waiver of any applicable bond requirement, the court dispenses with the bond requirement contained in Federal Rule of Civil Procedure 65(c).").

Defendant does not distinguish these authorities or offer any argument as to why this provision is unenforceable. To the extent the Court nevertheless believes an undertaking is required, Plaintiff is willing to post one forthwith.

### III.  CONCLUSION

Plaintiff has a right to take possession of Defendant's vehicle inventory. Having satisfied the requirements under California Code of Civil Procedure section 512.010, Plaintiff respectfully request the Court grant Plaintiff's Application for a Writ of Possession as to the remaining motor vehicle inventory in Defendant's possession.

Dated: August 17, 2020                     GREENBERG TRAURIG, LLP


                                            By: /s/ Lupe R. Laguna
                                                Kurt A. Kappes
                                                Lupe R. Laguna
                                                Jonathan K. Ogata
                                                Attorneys for Plaintiff
                                                NEXTGEAR CAPITAL, INC.