KURT A. KAPPES – SBN 146384
LUPE R. LAGUNA – SBN 307156
JONATHAN K. OGATA – SBN 325914
GREENBERG TRAURIG, LLP
1201 K Street, Suite 1100
Sacramento, CA  95814-3938
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
kappesk@gtlaw.com
lagunal@gtlaw.com
ogataj@gtlaw.com

Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NEXTGEAR CAPITAL, INC.., a Delaware Corporation,<br><br>    Plaintiff,<br><br>v.<br><br>ICARZ INC., d/b/a LENDING CLUB AUTO d/b/a LATINOS AUTO CENTER, a California Corporation,<br><br>    Defendant. | CASE NO.  2:20-CV-00851-MCE-CKD<br><br>**PLAINTIFF NEXTGEAR CAPITAL, INC.'S NOTICE OF MOTION AND MOTION TO FOR ENTRY OF DEFAULT & DEFAULT JUDGMENT AGAINST DEFENDANT ICARZ INC.; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**<br><br>Date:     December 3, 2020<br>Time:    2:00 p.m.<br>Courtroom:  7, 14th Floor |

**TO THE COURT, DEFENDANT, AND ITS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 3, 2020, at 2:00 p.m., or as soon thereafter as the matter may be heard in Courtroom 7 of the United States District Court, Eastern District of California, located at 501 I Street, Sacramento, California 95814, Plaintiff NextGear Capital, Inc. ("Plaintiff") will and hereby moves the Court to enter a default judgment against Defendant iCarz Inc., d/b/a Lending Club Auto d/b/a Latinos Auto Center ("Defendant"). This Application is made pursuant to Federal Rule of Civil Procedure 55 (b), which provides for a court ordered default judgment following entry of default by the court clerk under Federal Rule of Civil Procedure 55(a).

This Motion is based on this Notice of Motion; the Memorandum of Points and Authorities; the Declaration of Eric Brown; the records on file in this matter; and such further evidence and argument as the Court may permit or require at or prior to the time of the hearing on this Motion.

Dated:  October 23, 2020                                    GREENBERG TAURIG, LLP


                                                            By: /s/ Lupe R. Laguna
                                                                Kurt A. Kappes
                                                                Lupe R. Laguna
                                                                Jonathan K. Ogata
                                                                Attorneys for Plaintiff
                                                                NEXTGEAR CAPITAL, INC.

---

1

MOTION FOR ENTRY OF DEFAULT JUDGMENT

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ................................................................1

    I.    INTRODUCTION .........................................................................................................1

    II.    STATEMENT OF FACTS & RELEVANT PROCEDURAL HISTORY ..........................1

        A.    Contract Terms and Agreements ........................................................................1

        B.    Defendant's SOT Sale of The Collateral Vehicles ..................................................3

        C.    The Court Grants Plaintiff's Application for Temporary Restraining Order and Enjoins Defendant From Selling Any Collateral Vehicles ................................4

        D.    The Court Strikes Defendant's Answer ..................................................................4

    III.    ARGUMENT ..................................................................................................................5

        A.    The Court Should Direct The Clerk to Enter Defendant's Default Pursuant to Rule 55(a). ........................................................................................................5

        B.    The Court Should Enter a Default Judgment in Favor of Plaintiff Pursuant to Rule 55(b)(2). ..................................................................................................6

            1.    Plaintiff will be significantly prejudiced absent a default judgment. ............6
            2.    Plaintiff's Substantive Claims Are Meritorious and Well Pled. ...................7
            3.    The Sum of Money at Stake Weighs in Favor of Entry of Default Judgment. ........................................................................................................8
            4.    There is No Possibility of Dispute Concerning Material Facts. ...................9
            5.    Defendant's Default is Not Due to Excusable Neglect. ................................9
            6.    Policy Favoring Decisions On The Merits Does Not Outweigh Plaintiff's Right to Relief. ............................................................................10

        C.    Plaintiff Has Offered Adequate Evidence To Prove Up Its Damages ....................10

    IV.    CONCLUSION ..............................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adobe Sys. Inc. v. Software Tech*,
   5:14-CV-02140, 2015 WL 6956632 (N.D. Cal. Nov. 10, 2015) ............................................. 6

*Eitel v. McCool*,
   782 F.2d 1470 (9th Cir. 1986) .................................................................................................. 6

*Emp. Painters' Tr. v. Ethan Enters.*,
   480 F.3d 993 (9th Cir. 2007) .................................................................................................... 5

*PepsiCo, Inc. v. California Sec. Cans*,
   238 F. Supp. 2d 1172 (C.D. Cal. 2002) ................................................................................. 10

*Philip Morris USA, Inc. v. Castworld Prods., Inc.*,
   219 F.R.D. 494 (C.D. Cal. 2003) ...................................................................................... 9, 10

*Softketeers, Inc. v. Regal W. Corp. et al.*,
   No. SACV19519JVSJDEX, 2020 WL 5498074 (C.D. Cal. June 26, 2020) ........................... 6

*TeleVideo Systems, Inc. v. Heidenthal*,
   826 F.2d 915 (9th Cir. 1987). Application of the ................................................................ 6, 9

*Truong Giang Corp. v. Twinstar Tea Corp.*,
   No. C 06-03594 JSW, 2007 WL 1545173 (N.D. Cal. May 29, 2007) ..................................... 6

*United States v. Dampier Elec., Inc.*,
   No. 119CV01419DADSKO, 2020 WL 1317343 (E.D. Cal. Mar. 20, 2020),
   *report and recommendation adopted*, No. 119CV01419DADSKO, 2020 WL 5105796
   (E.D. Cal. Aug. 31, 2020) ................................................................................................... 8, 10

*Walters v. Statewide Concrete Barrier, Inc.*,
   No. C-04-2559 JSW MEJ, 2006 WL 2527776 (N.D. Cal. Aug. 30, 2006) .......................... 8, 9

**State Cases**

*Collins v. McKinney*,
   871 N.E.2d 363 (Ind. Ct. App. 2007) ....................................................................................... 7

*Dawson v. Fifth Third Bank*,
   965 N.E.2d 730 (Ind. Ct. App. 2012) ....................................................................................... 8

*Steinberg v. Chicago Med. Sch.*,
   69 Ill. 2d 320 (1977) ................................................................................................................. 7

*United Farm Fam. Mut. Ins. Co. v. Michalski*,
   814 N.E.2d 1060 (Ind. Ct. App. 2004) ..................................................................................... 8

**State Statutes**

Ind. Code § 26–1–9.1–609(a) ........................................................................................................ 8

i

MOTION FOR ENTRY OF DEFAULT JUDGMENT

**Rules**

Fed. R. Civ. P. 54(c) ............................................................................................................... 10

Fed. R. Civ. P. 55 .................................................................................................................... 10

Fed. R. Civ. P. 55(a) ................................................................................................................. 5

Fed. R. Civ. P. 55(b) .............................................................................................................. 10

Fed. R. Civ. P. 55(b)(2) ..................................................................................................... 6, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.  INTRODUCTION

Plaintiff NextGear Capital, Inc. ("Plaintiff") brought this action against Defendant iCarz, Inc. d/b/a LENDING CLUB AUTO d/b/a LATINOS AUTO CENTER ("Defendant") for breach of contract and seeking claim and delivery of the collateral securing Defendant's obligations under the operative agreement. Since this action's inception, there has been no dispute that Defendant is in default of the operative financing instrument. Indeed, in a Court ordered declaration offered by Defendant's CEO, Ari Gorgani, Defendant acknowledged that it had sold dozens of Plaintiff's collateral vehicles to third-party consumers. These vehicles were sold without the required payments to Plaintiff.

Defendant was initially represented by counsel. After granting that counsel's request to withdraw, this Court ordered Defendant to retain substitute counsel or its answer would be stricken. On October 6, 2020, after Defendant failed to retain counsel, the Court struck Defendant's answer. Given that Defendant has refused to participate in this action, and a corporation cannot represent itself *pro se*, Plaintiff respectfully requests that the Court to bring this litigation to an end and enter Defendant's default and award default judgment in favor of Plaintiff in the amount of $1,444,609.13.

## II.  STATEMENT OF FACTS & RELEVANT PROCEDURAL HISTORY

### A.  Contract Terms and Agreements

Plaintiff is a lender that focuses on, but is not limited to, inventory or floorplan financing for car dealerships. Defendant operated a pre-owned car dealership at 3215 Fulton Avenue, Sacramento, CA 95821. On August 29, 2013, Defendant and Plaintiff entered into a Demand Promissory Note and Loan and Security Agreement (the "Note"). (*See* Brown Decl., Ex. A.) Under the terms of the Note, Defendant obtained a floorplan credit line from Plaintiff in the amount of $500,000 "or such greater or lesser sum which may be advanced to or on behalf of [Defendant] from time to time, together with all costs, interest, fees, and expenses." (*Id.*) On or around August 3, 2015, Defendant and Plaintiff entered into an Amendment to the Demand Promissory Note and Loan and Security Agreement under which Defendant's floorplan credit line was increased to $1,000,000. (*Id.* at Ex. B.) On or around April 20, 2016, Defendant and Plaintiff again entered into an Amendment to Demand Promissory Note and Loan and Security Agreement under which Defendant's floorplan credit line was increased to $2,000,000. (*Id.* at Ex. C.)

Plaintiff owns and holds the Note and these amendments.  To date, there is $1,444,609.13 in outstanding principal and interest on the Note.  (*Id.* at ¶ 13.)

To secure the repayment of all amounts under the Note and all amendments thereto, Defendant granted a security interest to Plaintiff in the right, title, and interest in the following:

> "…all of [Defendant's] assets and properties, wherever located, including, without limitation, all equipment of any kind or nature; all vehicles and vehicle parts; all Inventory now owned or hereafter acquired, including, without limitation, all Lender Financed Inventory now owned or hereafter acquired; all amounts in [Defendant's]' Reserve held by or on behalf of Lender, if any; all documents, documents of title, deposit accounts, accounts receivable, manufacturer rebates and incentive payments, chattel paper, including, without limitation, all Receivables and general intangibles now owned or hereafter acquired by [Defendant]; all cash reserves; all of [Defendant's] books and records (including any books and records contained on computer hardware or software or otherwise stored by or on behalf of [Defendant] in electronic or digital form); and all additions, accessions, accessories, replacements, substitutions, and proceeds of any of the foregoing (collectively, the "Collateral").

(*See id.*, Ex. A, ¶ 2 (a).)  Plaintiff's security interest in the collateral was perfected upon the filing of a UCC Financing Statement Amendment on August 2, 2013.  The UCC Financing Statement, as amended by the August 2, 2013, amendment, identifies the collateral as:

> All [Defendant's] assets and properties wherever located, including without limitation all equipment of any nature, all vehicles, vehicle parts and inventory now owned or hereafter acquired, without limitation, purchase money inventory, the purchase of which was financed or floorplanned by NextGear Capital, Inc. for [Defendant] of whatever kind or nature, and all returns, repossessions, exchanges, substitutions, attachments, additions, accessions, accessories, replacements, and proceeds thereof; all accounts, accounts receivable, chattel paper, and general intangibles now owned or hereafter acquired by [Defendant] together with the proceeds thereof; all of [Defendant's] documents, books and records relating to the foregoing.

(*See id.*, Ex. D.)  Thus, under the terms of the Note and the accompanying UCC financing statement, Plaintiff holds a perfected security interest in all of Defendant's assets.  To ensure protection of Plaintiff's security interest, Defendant represented and warranted in the Note that it would "not remove any Lender Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless previously authorized in writing by the lender."  (*Id.* at Ex. A, ¶ 4 (b).)   And, that it "would provide [Plaintiff] and its representatives with full access to all Collateral."  (*Id.* at Ex. A, ¶ 2 (b).)

The most significant risk in floorplan financing is that the dealer borrower will sell the collateral in retail and then wrongfully retain the proceeds that should have been remitted to the floorplan lender. (*Id.* at ¶ 17.) A consumer purchaser of inventory in the ordinary course of business customarily takes the vehicle free of the lender's lien. (*Id.*) The floorplan lender's main protection is, therefore, the trust and integrity of the dealer borrower ***to payoff vehicles as they are sold***. (*Id.*) To the extent that the dealer borrower sells a vehicle in its inventory without paying off the principal and interest owed to the floorplan lender, such an occurrence is known as a "sale out of trust," or "SOT." (*Id.*)

To prevent sales out of trust, the Note mandates that "[u]pon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the proceeds from such sale in trust for the benefit of Lender, and Borrower shall pay to Lender, in accordance with this Note and the other Loan Documents, an amount equal to the unpaid balance of the Liabilities relating to such Unit of Lender Financed Inventory." (*Id.* at Ex. A, ¶ 5 (o).) These monies are due "within twenty-four (24) hours" of Defendant receiving those funds. (*Id.* at Ex. A, ¶ 4 (f).) Defendant's failure "to perform any of its obligations, undertakings or covenants under [the] Note or under any other Loan Document, including any obligation to repay any Liability when due...[or] obligation to pay upon demand any outstanding Liability under [the] Note" constitutes a default and a breach of the agreement. (*Id.* at Ex. A, ¶ 6(a).)

### B.     Defendant's SOT Sale of The Collateral Vehicles

Between May 14, 2019, and April 3, 2020, Defendant used the floorplan line of credit, to purchase one-hundred and twenty-six (126) vehicles from various sources for the principal amount of $1,444,609.13.

On March 27, 2020, an ACH payment initiated by Defendant in the amount of $41,017.51 was dishonored by Defendant's financial institution because Defendant initiated a "stop payment" order. (Brown Decl., ¶ 18.) The payment was ultimately completed, but the incident led to increased scrutiny of Defendant's account. This increased scrutiny revealed there were dozens of the subject vehicles that were not being offered for sale on Defendant's website. (*Id.* at ¶ 19.) Concerned that Defendant had sold the vehicles but failed to remit the outstanding monies due under the Note, Plaintiff repeatedly attempted to communicate with Defendant to determine the status of vehicles for which Plaintiff had provided financing but were apparently not being offered for sale, but Defendant was either non-responsive or evasive in its response. (*See id.* at ¶ 20.)

On April 8, 2020, Plaintiff declared Defendant in default of its obligations under the Note for, among other things, suspected SOT vehicles, and Plaintiff initiated a self-help repossession. (*Id.* at ¶ 21.) Upon performance of the repossession, Plaintiff determined that at least 13 of the subject vehicles had been sold out of trust. Plaintiff was able to determine the 13 vehicles were SOT because consumer financing companies that financed the purchases contacted Plaintiff asking for title to the vehicles. (*Id.*) Defendant never provided Plaintiff with any of the proceeds from these sales. (*Id.*) Another 66 of the subject vehicles were not on Defendant's premises and were unaccounted for. (*Id.*) Plaintiff demanded that Defendant assemble and deliver the missing vehicles, or to account for their whereabouts, but Defendant refused to do so. (*Id.* at ¶ 22.)

### C. The Court Grants Plaintiff's Application for Temporary Restraining Order and Enjoins Defendant From Selling Any Collateral Vehicles

Plaintiff filed the instant action on April 24, 2020 and shortly thereafter filed an application for temporary restraining order seeking to enjoin Defendant from further dissipating any collateral vehicles. (Compl., ECF No. 1; App. for TRO, ECF No. 5.) On May 1, 2020, the Court granted Plaintiff's application for temporary restraining order and enjoined Defendant from selling any of the collateral vehicles identified in Plaintiff's application. (TRO Order, ECF No. 6.) The Court further ordered Defendant to serve a declaration identifying the location any of the vehicles that had been sold or moved from Defendant's location. (*Id.* at ¶ 4.)

On May 14, 2020, Defendant's CEO, Ari Gorgani, served the Court ordered declaration on Plaintiff. As suspected, the declaration confirmed that Defendant had sold dozens of vehicles out of trust and without the required payments to Plaintiff. (*See* Brown Decl., Ex. F.) The Court's TRO Order was converted into a Preliminary Injunction on May 22, 2020. (PI Order, ECF No. 16.)

### D. The Court Strikes Defendant's Answer

Defendant, which is a California corporation, was initially represented by counsel from the law firm of Rogers, Joseph, O'Donell. On June 30, 2020, citing lack of payment for legal services rendered, counsel for Defendant filed a motion to withdraw. (*See* Motion to Withdraw, ECF No. 22.) On August 17, 2020, the Court granted the motion to withdraw but ordered that "[b]ecause Defendant is an entity that is not permitted to proceed in pro per, it shall, not later than thirty (30) days from the date that proof of service is

electronically filed, locate new counsel and have that counsel file a notice of appearance on the docket. If Defendant fails to timely comply with the terms of this Order, its Answer shall be STRICKEN upon no further notice to the parties." (Order, ECF No. 38.) Counsel for Defendant filed its proof of service as to the Court's order granting the motion to withdraw on August 17, 2020. (Proof of Service, ECF No. 40.) No counsel for Defendant subsequently appeared in the action, and, on October 6, 2020, the Court struck Defendant's answer. (Order, ECF No. 45.)

### III. ARGUMENT

The Court should enter Defendant's default and enter a corresponding default judgment in favor of Plaintiff. Defendant cannot represent itself *pro se* and refused to obey this Court's order directing it to retain new counsel. Thus, the Court should award Plaintiff a default judgment in the amount of $1,444,609.13.

### A. The Court Should Direct The Clerk to Enter Defendant's Default Pursuant to Rule 55(a).

The entry of default against a corporation pursuant to Rule 55(a) is appropriate where, as here, a corporation remains unrepresented by counsel. *Emp. Painters' Tr. v. Ethan Enters*., 480 F.3d 993, 998 (9th Cir. 2007) (observing that the Ninth Circuit "ha[s] recognized as a permissible sanction for failure" of a corporation to retain counsel). Defendant has failed to defend itself in this action by not obtaining substitute counsel after its former counsel was permitted to withdraw. As a result, Defendant, a corporation, has not been able to partake in the litigation. Despite having received warning from the Court regarding possible ramifications if it did not retain new counsel, Defendant continues to remain unrepresented in this action. Defendant received notice of its prior counsel's intent to withdraw and did not object to that motion. (Motion, ECF No. 22.) Defendant was also notified that failure to retain counsel within 30 days of the Court's order would result in its answer being stricken. (Order, ECF No. 44.). Nevertheless, Defendant has remained unrepresented by counsel for more than 30 days and the Court struck Defendant's answer. (Order, ECF No. 45.)

The Court should, therefore, direct the Clerk to enter a default against Defendant. Rule 55(a) requires entry of default where "a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." Fed. R. Civ. P. 55(a). The Clerk's entry of default is automatic, not

discretionary, and a Clerk must enter default as soon as information necessary for the entry of default has been provided. This rule has been applied to obtain the default of corporate defendants in cases where a corporate defendant failed to obtain new counsel. *See, e.g. Adobe Sys. Inc. v. Software Tech*, 5:14-CV-02140, 2015 WL 6956632, at *2 (N.D. Cal. Nov. 10, 2015) (striking the answer of a corporate defendant and entering default when the corporate defendant failed to hire new counsel). Thus, this Court should direct the Clerk to enter Defendant's default because it still remains unrepresented by counsel, despite being warned of the possible consequences if it did not retain new counsel. *See id.; see also Softketeers, Inc. v. Regal W. Corp. et al.*, No. SACV19519JVSJDEX, 2020 WL 5498074, at *1 (C.D. Cal. June 26, 2020).

**B.     The Court Should Enter a Default Judgment in Favor of Plaintiff Pursuant to Rule 55(b)(2).**

Sufficient grounds exist for the entry of a default judgment against Defendant, and the Court should enter a default judgment against Plaintiff pursuant to Rule 55(b)(2). The Ninth Circuit has enumerated several factors the Court should consider in deciding whether to grant default judgment: (A) the possibility of prejudice to the plaintiff; (B) the merits of plaintiff's substantive claim; (C) the sufficiency of the complaint; (D) the sum of money at stake in the action; (E) the possibility of a dispute concerning material facts; (F) whether the default was due to excusable neglect; and (G) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Truong Giang Corp. v. Twinstar Tea Corp.*, No. C 06-03594 JSW, 2007 WL 1545173, at *3 (N.D. Cal. May 29, 2007) (citing *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986)). In considering the above factors, the Court takes all factual allegations in the Complaint as true, except for those relating to damages. *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987). Application of the facts in this matter to the *Eitel* factors clearly warrant entry of default judgment in favor of Plaintiff.

1.     *Plaintiff will be significantly prejudiced absent a default judgment*.

The first *Eitel* factor, the prejudice to Plaintiff, weighs strongly in favor of a default judgment. Defendant has refused to participate in this lawsuit and failed to retain counsel, as this Court directed it to do. Absent a default judgment, Plaintiff will not be compensated for its losses and will accordingly be prejudiced. Given that Defendant is a corporation that has refused to retain counsel, and cannot represent

itself *pro se* before this Court, absent a default judgment Plaintiff will be left with no recourse against Defendant. Accordingly, this first *Eitel* factor, the possibility of prejudice to the plaintiff, weighs in favor of granting default judgment.

### 2. *Plaintiff's Substantive Claims Are Meritorious and Well Pled.*

The second and third *Eitel* factors, concerning the merits of Plaintiff's substantive claims and the sufficiency of its Complaint, also weigh in favor of granting a default judgment in favor of Plaintiff and against Defendant. Plaintiff has alleged two substantive causes of action against Defendant: (1) breach of contract; and (2) replevin. Both of these claims are meritorious and adequately pled in the Complaint.

First, Plaintiff's breach of contract claim is unassailable. Plaintiff's breach of contract claim is controlled by Indiana law. (*See* Brown Decl, Ex. A, ¶ 20.) To recover from a breach of contract under Indiana law a party must prove "that: (1) a contract existed, (2) the defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach. *Collins v. McKinney*, 871 N.E.2d 363, 369 (Ind. Ct. App. 2007). There can be no dispute that a contract existed as it was duly executed by both parties. The Note constitutes a set of promises between Plaintiff and Defendant, supported by legal consideration, for Plaintiff to advance funds to finance Defendant's inventory in exchange for Defendant's repayment of such funds, including interest and fees, as outlined in the Note. For this reason, the Note is a binding contract. *See Steinberg v. Chicago Med. Sch.*, 69 Ill. 2d 320, 329 (1977).

It is equally clear that Defendant has materially breached the Note. To prevent sales out of trust, the Note mandates that "[u]pon the sale of any Unit of Lender Financed Inventory, Borrower shall hold the proceeds from such sale in trust for the benefit of Lender, and Borrower shall pay to Lender, in accordance with this Note and the other Loan Documents, an amount equal to the unpaid balance of the Liabilities relating to such Unit of Lender Financed Inventory." (Brown Decl., Ex. A, ¶ 5 (o).) These monies are due "within twenty-four (24) hours" of iCarz receiving those funds. (*Id.* at Ex. A, ¶ 4 (f).) The declaration of Ari Gorgani, submitted by Defendant under Court order, confirms that dozens of vehicles have been sold out of trust, and Plaintiff has not received any of proceeds of these sales. (*Id.* at ¶ 21.) Separately, in the Note iCarz agreed that it would "not remove any Lender Financed Inventory from such place for a period exceeding twenty-four (24) hours, unless previously authorized in writing by the lender." (*Id.* at Ex. A, ¶ 4 (b).) The Declaration of Ari Gorgani confirms that all but seven of the vehicles have been sold or

otherwise moved from Defendant's location. (*Id.* at ¶ 22.) iCarz's conduct is in direct contravention of the aforementioned Note provisions, and iCarz's failure to perform constitutes an event of default under the Note. (*Id.* at Ex. A, ¶ 6(a).) Finally, Plaintiff has suffered damages as a result of Defendant's breach. Within 24 hours of sale, iCarz is required to remit to Plaintiff the unpaid balance of the liabilities relating to the sold subject vehicle. Defendant's refusal to do so with the vehicles that have been sold out of trust has caused significant financial injury to Plaintiff. There can therefore be no question that Plaintiff will prevail on the merits of its breach of contract claim.

Plaintiff's replevin claim is similarly well pled. Under Indiana law, a claim for replevin is successful if the plaintiff proves her right to title or possession of property, proves that the property is unlawfully detained, and proves that the defendant wrongfully holds possession of the property. *See United Farm Fam. Mut. Ins. Co. v. Michalski*, 814 N.E.2d 1060, 1067 (Ind. Ct. App. 2004). Plaintiff has established a security interest in the collateral described in the Note, and Plaintiff perfected the security interest by filing the appropriate UCC–1 Financing Statement. It is black letter law that, upon default, a secured creditor has the right to take possession of the collateral securing its claim. *Dawson v. Fifth Third Bank*, 965 N.E.2d 730, 735 (Ind. Ct. App. 2012). There is no dispute that Defendant has defaulted on the Note and that therefore Plaintiff, as the secured party, has a right to take possession of the collateral. *See* Ind. Code § 26–1–9.1–609(a).

Thus, the second and third *Eitel* factors weigh in favor of entry of default judgment.

### 3. *The Sum of Money at Stake Weighs in Favor of Entry of Default Judgment.*

The sum of money sought also supports entry of a default judgment against Defendant. Assessing this factor "requires a comparison of the recovery sought and the nature of the defendant's conduct to determine whether the remedy is appropriate." *United States v. Dampier Elec., Inc.*, No. 119CV01419DADSKO, 2020 WL 1317343, at *5 (E.D. Cal. Mar. 20, 2020), *report and recommendation adopted*, No. 119CV01419DADSKO, 2020 WL 5105796 (E.D. Cal. Aug. 31, 2020). Thus, "[i]f the sum of money at issue is reasonably proportionate to the harm caused by the defendant's actions, then default judgment is warranted." *Walters v. Statewide Concrete Barrier, Inc.*, No. C-04-2559 JSW MEJ, 2006 WL 2527776, at *4 (N.D. Cal. Aug. 30, 2006) (ordering entry of default judgment on breach of contract case because "Plaintiffs only seek to recover the amount of money owed to them pursuant to the bargaining

agreement."").

Here, Plaintiff seeks to recover $1,444,609.13, which is the amount outstanding under the Note. Declining to enter a default judgment against Defendant—which has defaulted on the Note, dissipated the collateral vehicles, and refused to defend itself in this action—would award Defendant a windfall. Thus, because Plaintiff only seeks the amount owed to it under the Note, "the sum of the money at stake is reasonably proportionate to the harm caused to them by Defendants' breach." *Id.* at 5.

### 4.   *There is No Possibility of Dispute Concerning Material Facts.*

There is also no possibility of dispute regarding material facts. Upon the entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages. *See Televideo*, 826 F.2d at 917. The facts of Plaintiff's well-pled complaint are indisputable. Defendant and Plaintiff entered into the Note and Plaintiff extended Defendant nearly $1.5 million in financing. Defendant defaulted on the Note and began selling the collateral without payment to Plaintiff. The Court ordered declaration of Ari Gorgani confirms that Defendant has, in fact, sold dozens of the collateral vehicles. These facts readily establish that Defendant is in breach of the Note and there can be no dispute concerning material facts.

### 5.   *Defendant's Default is Not Due to Excusable Neglect.*

The fifth *Eitel* factor contemplates the possibility that the defendant's default was the result of excusable neglect. Under this analysis, the court considers whether the defendant was put on adequate notice to apprise them of the pendency of the action brought against it. *Phillip Morris*, 219 F.R.D. 494 at 500. In addition, the court also considers whether the circumstances surrounding the defendant's failure to answer the complaint are sufficient to excuse or justify its default. *Id.*

Here, the possibility of excusable neglect is remote because Defendant has received adequate notice of the consequences associated with proceeding without counsel and done nothing. Plaintiff served Defendant with the Complaint on May 5, 2020. (Service of Summons, ECF No. 7.) Defendant retained counsel and answered the Complaint June 9, 2020. (Answer, ECF No. 19.) Defendant's counsel filed a motion to withdraw on June 30, 2020. (Mot. to Withdraw, ECF No. 22.) On August 17, 2020, the Court granted Defendant's counsel's motion to withdraw but warned:

> Because Defendant is an entity that is not permitted to proceed in pro per, it shall, not later than thirty (30) days from the date that proof of service is electronically filed, locate new counsel and have that counsel file a notice of appearance on the docket. If Defendant fails

to timely comply with the terms of this Order, its Answer shall be STRICKEN upon no further notice to the parties.

(Order, ECF No. 38.)  The Court gave Defendant ample time to retain new counsel and, in spite of the Court's warning, Defendant failed to appear with replacement counsel.  (*See* ECF No. 45.)  Under such circumstances, there is no possibility that Defendant's failure to obey this Court's order and retain counsel is due to excusable neglect.

      6.    <u>*Policy Favoring Decisions On The Merits Does Not Outweigh Plaintiff's Right to Relief.*</u>

Although there is a strong judicial policy favoring decisions on the merits, "the fact that Rule 55(b) has been enacted, however, indicates that this preference, standing alone, is not dispositive."  *Dampier Electric, Inc.*, 2020 WL 1317343, at *6 (internal quotation and citation omitted).  Rule 55 of the Federal Rules of Civil Procedure allows a court to decide a case before the merits are heard if the defendants fail to appear and defend.  *See PepsiCo, Inc. v. California Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002) ("Defendant's failure to answer plaintiffs' complaint makes a decision on the merits impractical, if not impossible").  Since Defendant's failure to participate in this action has rendered a decision on the merits impossible, the seventh *Eitel* factor does not preclude the entry of default judgment against Defendant.

**C.**    **Plaintiff Has Offered Adequate Evidence To Prove Up Its Damages**

Plaintiff is required to prove all damages sought in the Complaint. Fed. R. Civ. P. 54(c); *see also Philip Morris USA, Inc. v. Castworld Prods., Inc*., 219 F.R.D. 494, 498 (C.D. Cal. 2003).  In determining damages, a court can rely on the declarations submitted by Plaintiff or order a full evidentiary hearing.  *See* Fed. R. Civ. P. 55(b)(2).  Plaintiff's burden in "proving up" damages is relatively lenient.  *See Castworld Prods*., 219 F.R.D. at 498.

Here, Plaintiff's damages are readily ascertainable.  Defendant owes Plaintiff $1,444,609.13 in unpaid principal and interest under the Note in connection with the 126 vehicles Plaintiff financed for Defendant with the floorplan line of credit.  (Brown Decl, ¶ 13.)  This figure is derived from the iCarz Receivable detail, which identifies each financed vehicle under the Note by, among other things, (a) floor date; (b) vehicle description; (c) vehicle color; (d) VIN; (e) Stk#; (f) source; (g) the principal amount owed

for each vehicle; and (h) the outstanding balance under the Note. (*Id.* at ¶ 15.) Plaintiff has received no payment from Defendant relating to any of these vehicles, and it has sold the vast majority of them out of trust. (*Id.* at ¶ 25.) Thus, there can be no dispute that Plaintiff is owed the monies loaned to Defendant in connection with each vehicle transaction, and default judgment should be entered in favor of Plaintiff and against Defendant in the amount outstanding under the Note, which is $1,444,609.13.

### IV.  CONCLUSION

Because Defendant may not appear before this Court without being represented by licensed counsel, and the Court has struck Defendant's answer, Plaintiff requests that this Court direct the clerk to enter Defendant's default pursuant to Rule 55(a). Plaintiff additionally asks the Court to enter a default judgment against Defendant pursuant to Rule 55(b) in the amount of $1,444,609.13.

Dated: October 23, 2020                                      GREENBERG TRAURIG, LLP

By: /s/ Lupe R. Laguna
Kurt A. Kappes
Lupe R. Laguna
Jonathan K. Ogata
Attorneys for Plaintiff
NEXTGEAR CAPITAL, INC.

11
MOTION FOR ENTRY OF DEFAULT JUDGMENT